UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY SNEED,

    Petitioner,

    v.

A. P. KANE, warden,

    Respondent.

                                 /

No. C 05-4109 SI (pr)

**ORDER DENYING HABEAS PETITION**

## INTRODUCTION

Anthony Sneed, a prisoner at the Correctional Training Facility in Soledad, California, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Anthony Sneed was convicted in Los Angeles County Superior Court of first degree murder with use of a deadly weapon, and was sentenced to 26 years to life in prison in 1982. His habeas petition does not concern that conviction directly, but instead focuses on a December 30, 2004 decision by Governor Arnold Schwarzenegger to reverse a determination by a panel of the Board of Prison Terms ("BPT") to find Sneed suitable for parole.

The Governor identified the "gravity of the murder" as the reason for his determination that Sneed was not suitable for parole. Resp. Exh. 3 (December 18, 2004 Governor's decision), p. 3. The Governor stated that "the depraved and senseless nature" of the murder and Sneed's "exceptional callousness" is a "sufficient basis on which to conclude that his release from prison at this time would pose an unreasonable public-safety risk." Id. The specifics regarding the crime and the circumstances supporting the finding of unsuitability are described in the Discussion section later in this order.

Sneed filed habeas petitions in the California courts. Although there is a reasoned decision from the Los Angeles County Superior Court, that decision pertained to an earlier denial of parole by a BPT panel. See Petition, Exh. D. The only state habeas decision that was issued after the Governor's decision and that considered the Governor's decision was the summary denial by the California Supreme Court. See id.

Sneed then filed his federal petition for a writ of habeas corpus. The court found cognizable one claim alleged in the petition: that the Governor's reversal of the BPT's decision violated Sneed's due process rights because it lacked sufficient evidentiary support. The court ordered respondent to show cause why the writ should not issue. Respondent filed an unsuccessful motion to dismiss. Respondent then filed an answer and petitioner filed a traverse. This court considered the record rather sparse with regard to the commitment offense and ordered respondent to file a copy of that portion of the record pertaining to the commitment offense that the Governor had before him when he made his decision." Order For Supplemental Materials, p. 2. Respondent filed the requested materials. The matter is now ready for a decision on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged action occurred at the Soledad Correctional Training Facility in Monterey County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Williams (Terry) v. Taylor, 529 U.S. 362, 409-13 (2000).   Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole.  See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

The California Supreme Court upheld the Governor's decision in a summary denial of Sneed's habeas petition.  Where, as here, the state court gives no reasoned explanation of its decision, an "independent review of the record" is the only means of deciding whether the state court's decision was objectively reasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). While the federal court sitting in habeas review need not "defer to a state court's decision when that court gives us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable

3

application of clearly established federal law." <u>Fisher v. Roe</u>, 263 F.3d 906, 914 (9th Cir. 2001).

## DISCUSSION

A.  <u>Due Process Requires That Some Evidence Support a Parole Denial</u>

A California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. <u>See</u> <u>Sass</u>, 461 F.3d at 1127-28; <u>Board of Pardons v. Allen</u>, 482 U.S. 369 (1987); <u>Greenholtz v. Inmates of Nebraska Penal & Corr. Complex</u>, 442 U.S. 1 (1979); Cal. Penal Code § 3041(b).

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. <u>Sass</u>, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in <u>Superintendent v. Hill</u>, 472 U.S. 445, 454-55 (1985)). The California Supreme Court has determined, as a matter of state law, that the Governor's decision must also satisfy the "some evidence" standard. <u>See</u> <u>In re Rosenkrantz</u>, 29 Cal.4th 616, 676-677 (Cal. 2002), <u>cert. denied</u>, 538 U.S. 980 (2003). The Governor's decision must be supported by some evidence.

"To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the Governor. <u>Sass</u>, 461 F.3d at 1128 (quoting <u>Superintendent v. Hill</u>, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" <u>Id.</u> at 1129 (quoting <u>Superintendent v. Hill</u>, 472 U.S. at 457). The some evidence standard of <u>Superintendent v. Hill</u> is clearly established law in the parole context for purposes of § 2254(d). <u>Sass</u>, 461 F.3d at 1129.

Furthermore, and of key importance, the Governor and parole board are not precluded from relying on unchanging factors such as the circumstances of the commitment offense or the petitioner's pre-offense behavior in determining parole suitability. <u>See</u> <u>id.</u> at 1129 (commitment

1  offenses in combination with prior offenses provided some evidence to support denial of parole).
2  The familiar argument that the parole authority cannot rely on these factors is based on the Ninth
3  Circuit's statements in Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), that suggested that the
4  value of the criminal offense fades over time as a predictor of parole suitability: "The Parole
5  Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors
6  considered. . . . A continued reliance in the future on an unchanging factor, the circumstance
7  of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals
8  espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at
9  916-17. In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely
10 on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that
11 "[o]ver time . . . , should Biggs continue to demonstrate exemplary behavior and evidence of
12 rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and
13 prior conduct would raise serious questions involving his liberty interest in parole." Id. at 916.
14 These statements were dicta and not clearly established federal law as set forth by the Supreme
15 Court, such that the state court's refusal to adopt the Biggs reasoning would be a decision
16 contrary to, or an unreasonable application of, clearly established federal law as set forth by the
17 Supreme Court. The Ninth Circuit recently backed away from the Biggs statements, and
18 confirmed that these statements from Biggs were dicta and were inappropriate under § 2254.
19 See Sass, 461 F.3d at 1129. "Under AEDPA it is not our function to speculate about how future
20 parole hearings could proceed." Sass, 461 F.3d at 1129.

21     What little guidance has come from the Supreme Court suggests that judicial review
22 should be extremely deferential to the original decision-maker in the parole context. In addition
23 to the very low evidentiary standard that Superintendent v. Hill imposes, other Supreme Court
24 comments suggest that the judiciary should be quite mindful of the subjective and predictive
25 nature of a parole board's decision. See Greenholtz, 442 U.S. at 13. "No ideal, error-free way
26 to make parole-release decisions has been developed; the whole question has been and will
27 continue to be the subject of experimentation involving analysis of psychological factors
28 combined with fact evaluation guided by the practical experience of decisionmakers in

1  predicting future behavior. Our system of federalism encourages this state experimentation."
2  Id.; see also id. at 8. In California, that deference applies with equal strength to the Governor's
3  decision to reverse the parole board's finding of suitability. See Rosenkrantz, 29 Cal.4th at 677
4  ("As with the discretion exercised by the Board in making its decision, the precise manner in
5  which the specified factors relevant to parole suitability are considered and balanced lies within
6  the discretion of the Governor").

7  Past criminal conduct is not some arbitrary factor like eye color that has nothing to do
8  with present dangerousness. Recidivism concerns are genuine. See Ewing v. California, 538
9  U.S. 11, 26 (2003) (O'Connor J.) (noting a report stating that over 60% of violent offenders were
10 arrested again within three years of their release). California's parole scheme does not offend
11 due process by allowing the BPT to predict that an inmate presents a present danger based on
12 a murder he committed many years ago.

13 Having determined that there is a due process right, and that some evidence is the
14 evidentiary standard for judicial review, the next step is to look to state law because that sets the
15 criteria to which the some evidence standard applies. One must look to state law to answer the
16 question, "'some evidence' of what?"

17

18 B.   State Law Standards For Parole For Murderers In California

19 California uses indeterminate sentences for most non-capital murderers, with the term
20 being life imprisonment and parole eligibility after a certain minimum number of years. A first
21 degree murder conviction yields a minimum term of 25 years to life and a second degree murder
22 conviction yields a base term of 15 years to life imprisonment. See In re Dannenberg, 34 Cal.
23 4th 1061, 1078 (Cal.), cert. denied, 126 S. Ct. 92 (2005); Cal. Penal Code § 190. The upshot
24 of California's parole scheme described below is that a release date normally must be set unless
25 various factors exist, but the "unless" qualifier is substantial.

26 A BPT panel meets with an inmate one year before the prisoner's minimum eligible
27 release date "and shall normally set a parole release date. . . . The release date shall be set in a
28 manner that will provide uniform terms for offenses of similar gravity and magnitude in respect

6

to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Penal Code § 3041(a). Significantly, that statute also provides that the panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).

One of the implementing regulations, 15 Cal. Code Regs. § 2401, provides: "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public."[1] The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a). The panel may consider all relevant and reliable information available to it. 15 Cal. Code Regs. § 2402(b).

The regulations contain a matrix of suggested base terms for several categories of crimes. See 15 Cal. Code Regs. § 2403. For example, for second degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years to a high of 19, 20, or 21 years, depending on some of the facts of the crime. Some prisoners estimate their time to serve based only on the

---

[1] The listed circumstances tending to show unsuitability for parole are the nature of the commitment offense, i.e., whether the prisoner committed the offense in "an especially heinous, atrocious or cruel manner"; the prisoner has a previous record of violence; the prisoner has an unstable social history; the prisoner previously engaged in a sadistic sexual offense; the prisoner has a lengthy history of severe mental problems related to the offense; and negative institutional behavior. 15 Cal. Code Regs. § 2402(c). The listed circumstances tending to show suitability for parole are the absence of a juvenile record, stable social history, signs of remorse, a stressful motivation for the crime, whether the prisoner suffered from battered woman's syndrome, lack of criminal history, the present age reduces the probability of recidivism, the prisoner has made realistic plans for release or developed marketable skills, and positive institutional behavior. 15 Cal. Code Regs. § 2402(d).

7

1 matrix. However, going straight to the matrix to calculate the sentence puts the cart before the
2 horse because it ignores critical language in the relevant statute and regulations that requires him
3 first to be found suitable for parole.

4       The statutory scheme places individual suitability for parole above a prisoner's expectancy
5 in early setting of a fixed date designed to ensure term uniformity. Dannenberg, 34 Cal. 4th at
6 1070-71. Under state law, the matrix is not reached unless and until the prisoner is found
7 suitable for parole. Id. at 1070-71; 15 Cal. Code Regs. § 2403(a) ("[t]he panel shall set a base
8 term for each life prisoner who is found suitable for parole"). The California Supreme Court's
9 determination of state law in Dannenberg is binding in this federal habeas action. See Hicks v.
10 Feiock, 485 U.S. 624, 629-30 (1988).

11       The California Supreme Court also has determined that the facts of the crime can alone
12 support a sentence longer than the statutory minimum even if everything else about the prisoner
13 is laudable. "While the Board must point to factors beyond the minimum elements of the crime
14 for which the inmate was committed, it need engage in no further comparative analysis before
15 concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for
16 the prisoner's release." Dannenberg, 34 Cal. 4th at 1071; see also In re Rosenkrantz, 29 Cal. 4th
17 616, 682-83 (Cal. 2002), cert. denied, 538 U.S. 980 (2003) ("[t]he nature of the prisoner's
18 offense, alone, can constitute a sufficient basis for denying parole" but might violate due
19 process "where no circumstances of the offense reasonably could be considered more
20 aggravated or violent than the minimum necessary to sustain a conviction for that offense").

22   C.    <u>Some Evidence Supports The Governor's Decision In Sneed's Case</u>
23       The crime was summarized in the Life Prisoner Evaluation Report available to the
24 Governor:

> During the late evening hours of 1/17/81, a house party was held in Pomona, CA and in attendance were members of both the "Blood" and "Cuzz" Gangs. During [the] course of the party, a handgun was discharged but no one was injured. It appeared the gunshot was the aftermath of arguments between rival gang members. Some partygoers stated that they had seen a pistol in the hand of seventeen-year old Anthony Burton and he hurriedly left in the company of Derrick and Ronald Washington. All three juveniles were seen entering a vehicle driven by Sneed, which departed the area. Various

8

>partygoers had attempted to stop the three teenagers from leaving, but they were unsuccessful because of the assistance given them by Sneed. A short time later, near the intersection of Larchmont and Ashfield in Pomona, seventeen-year old Fred Wright was shot to death. Officers that responded to the crime scene were advised by witnesses that they had seen Anthony Burton, Derrick Washington, Ronald Washington, and a person that wore clothing similar to Sneed, running from where Fred Wright had fallen.

Supplemental Materials, attach. 6, p. 1. The person who fired the shots at the party and in the alley was determined to be Burton and not Sneed. Id. Although the summary of the crime reported only one shooting victim, other documents in the record showed that the shots in the alley hit two victims: Fred Wright was shot in the forehead and Elizabeth Wilson was shot in the thigh. See Supplemental Materials, attach. 1 (verdict forms); attach. 4 (sentencing hearing transcript). The shooting of Fred Wright was the basis for Sneed's first degree murder conviction. As to the shooting of Elizabeth Wilson, Sneed was found not guilty of attempted murder but guilty of assault with a deadly weapon. See Supplemental Materials, attach. 1.

At the parole suitability hearing, Sneed suggested he had a very limited involvement in the murder. Sneed stated that the juveniles (Burton and the Washington brothers) ran into the alley and that Sneed stayed by the car when the killing took place. He stated that the juveniles returned, he asked what had happened and was told that Burton had fired the gun. RT 13-17. Sneed stated that he left the juveniles and went to a corner store, where he bought chips and a soda for a snack. RT 17. He stated that he did not learn until the next morning that Wright had been killed. RT 18. The Governor was not required to accept Sneed's version of what had happened. The Governor thought "that much of [Sneed's] story seems unlikely," but did not consider it "a factor tipping the scales in favor of or against Mr. Sneed's parole at this time." Governor's decision, p. 2.

One of the circumstances tending to indicate unsuitability for parole is that the prisoner "committed the offense in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. § 2402(c)(1). The factors to be considered in determining whether that circumstance exists are that there were multiple victims, "[t]he offense was carried out in a dispassionate and calculated manner, such as an execution-style murder," "[t]he victim was abused, defiled or mutilated during or after the offense," "[t]he offense was carried out in a manner which demonstrates an

9

exceptionally callous disregard for human suffering," and "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." 15 Cal. Code Regs. § 2402(c)(1).

The Governor identified the commitment offense as the reason for his decision to find Sneed unsuitable for parole. There was some evidence in the record to support the Governor's determination that the circumstances of the commitment offense indicated unsuitability for parole. The Governor wrote:

> Mr. Sneed was involved in an inexplicable shooting spree that resulted in one person being killed and another being injured. There is nothing in the record before me to indicate why this group of young people was targeted. Likewise, based on the record before me, Mr. Wright was not the person that Mr. Burton had argued with earlier that night at the party. Mr. Wright and Ms. Wilson were doing nothing more than standing on a street corner with friends. They were not armed and did not present any sort of threat to Mr. Sneed or his partners. These two young people as well as their friends had no chance to defend themselves against this unexpected and lethal attack. The depraved and senseless nature of these shootings--as well as the exceptional callousness demonstrated by Mr. Sneed when, after knowing--at a minimum–that gun shots were fired in the vicinity of a group of people, he left the scene to get himself some snacks, makes the first-degree murder for which he was convicted especially grave. This factor alone is a sufficient basis on which to conclude that his release from prison at this time would pose an unreasonable public safety risk.

Governor's decision, p. 3. The Governor identified more than the minimum elements of a first degree murder. See Dannenberg, 34 Cal. 4th at 1071.

The Governor considered a circumstance and factors proper under California law in assessing Sneed's suitability for parole. The record supported a determination that murder was committed in a callous manner. There was evidence that Sneed was in the alley with the shooter, that Sneed knew the shooter had a gun, and that Sneed went for a snack rather than call the police or check on the victims after the shooting occurred. The record also supported a determination that the motive for the killing was inexplicable given the severity of the crime. Wright and Wilson were not the people that Burton had been arguing with at the party; there was no evidence in the record as to why they were targeted. Id. at 20.

One of the things that caught the court's attention -- and prompted the order for supplemental materials -- was the attribution to Sneed of someone else's motive in firing a gun because Sneed had indicated at the parole hearing that he wasn't anywhere near the shooting and his total involvement had been as an unwitting driver. Under those circumstances, the triviality

of the motive for the shooting might say little about Sneed's current dangerousness. The supplemental materials provided by respondent show, however, that there was evidence in the record that Sneed had a greater involvement than merely being an unknowing chauffeur on the night of the killing. At the sentencing hearing, the prosecutor described the murder as "an ambush" and stated that the earlier shooting at the party "was very possibly part of the reason for the shooting of this individual." Supplemental Materials, attach., p. 4. Even defense counsel conceded that Sneed was in the alley at the time of the shooting, although he was not the shooter. Id. at 5. When defense counsel urged the Sneed was found not to have been armed, the judge corrected him and stated that the jury found that Sneed "was armed with a firearm, but did not use a firearm." Id. Sneed may portray himself as just an unwitting driver, but the record indicates he was much more in the thick of things when Wright was killed and Wilson was injured.

Upon an independent review of the record, the court concludes that there was some evidence to support the Governor's decision. The California Supreme Court's denial of Sneed's petition for writ of habeas corpus was not contrary to or an unreasonable application of clearly federal law as established by the U.S. Supreme Court. Sneed is not entitled to the writ.

**CONCLUSION**

For the foregoing reasons, the petition is denied on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: December 18, 2006

                                                    SUSAN ILLSTON
                                        United States District Judge